# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT FOX, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| FIRST HORIZON CORP., HARRY V. | : **SECURITIES EXCHANGE ACT OF 1934** |
| BARTON JR., KENNETH A. BURDICK, | : |
| DARYL G. BYRD, JOHN N. CASBON, | : |
| JOHN C. COMPTON, WENDY P. | : |
| DAVIDSON, WILLIAM H. | : |
| FENSTERMAKER, D. BRYAN JORDAN, J. | : |
| MICHAEL KEMP, SR., RICK E. MAPLES, | : |
| VICKI R. PALMER, COLIN V. REED, E. | : |
| STEWARD SHEA III, CECELIA D. | : |
| STEWART, RAJESH SUBRAMANIAM, | : |
| ROSA SUGRANES, and R. EUGENE | : |
| TAYLOR, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On February 27, 2022, First Horizon Corp. ("First Horizon" or the "Company") and TD Bank US Holding Company ("TD US Holding"), a wholly owned subsidiary of Toronto-Dominion Bank, ("TD"), and Falcon Holdings Acquisition Co. ("TD Merger Sub"), a wholly owned subsidiary of TD US Holding, entered into an agreement and plan of merger (the "Merger Agreement") (collectively, the "Proposed Merger").

2. Under the terms of the Merger Agreement, First Horizon will be acquired by TD Merger Sub. If the Proposed Merger is completed, First Horizon's stockholders will receive $25.00 in cash for each share they own.

3. On April 22, 2022, defendants filed a Schedule 14A Proxy Statement (the "Proxy") pursuant to the Securities Exchange Act of 1934.

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an

individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District.

## THE PARTIES

8. Plaintiff is and has been continuously at all relevant times the owner of First Horizon common stock.

9. Defendant First Horizon is a Tennessee corporation. First Horizon's common stock is traded on the New York Stock Exchange under the ticker symbol "FHN."

10. Defendant Daryl G. Byrd is Executive Chairman of the Board of Directors of First Horizon (the "Board").

11. Defendant Harry V. Barton Jr. is a member of the Board.

12. Defendant Kenneth A. Burdick is a member of the Board.

13. Defendant John N. Casbon is a member of the Board.

14. Defendant John C. Compton is a member of the Board.

15. Defendant Wendy P. Davidson is a member of the Board.

16. Defendant William H. Fenstermaker is a member of the Board.

17. Defendant D. Bryan Jordan is the President and CEO of First Horizon and a member of the Board.

18. Defendant J. Michael Kemp, Sr. is a member of the Board.

19. Defendant Rick E. Maples is a member of the Board.

20. Defendant Vicki R. Palmer is a member of the Board.

21. Defendant Colin V. Reed is a member of the Board.

22. Defendant E. Stewart Shea III is a member of the Board

23. Defendant Cecelia D. Stewart is a member of the Board.

24. Defendant Rajesh Subramaniam is a member of the Board.

25. Defendant Rosa Sungrañes is a member of the Board.

26. Defendant R. Eugene Taylor is a member of the Board.

27. Defendants identified in ¶¶ 10-26 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

28. First Horizon is a leading regional financial services company.

29. First Horizon's principal operating subsidiary, First Horizon Bank, a Tennessee state-chartered bank, operates in 12 states across the southern U.S. and New York with approximately 400 banking centers and serves over 1.1 million consumer and business customers. The Company and its subsidiaries offer commercial, private banking, consumer, small business, wealth and trust management, retail brokerage, capital markets, fixed income, mortgage, and title insurance services.

30. TD is a Schedule I bank under the Bank Act (Canada), and a financial holding company with $1.4 trillion in global assets as of January 31, 2022. TD US Holding is a wholly owned subsidiary of TD Group Holdings US LLC and serves as the direct parent bank holding company of TD's two U.S. bank subsidiaries, TD Bank, N.A. and TD Bank USA, National Association.

31. On February 27, 2022, First Horizon entered into the Merger Agreement.

32. The press release announcing the Proposed Merger provides as follows:

TD Bank Group ("TD" or "the Bank") (TSX and NYSE: TD) and First Horizon Corporation ("First Horizon") (NYSE: FHN) today announced that they have

signed a definitive agreement for TD to acquire First Horizon in an all-cash transaction valued at US$13.4 billion, or US$25.00 for each common share of First Horizon. Through this financially compelling transaction, TD accelerates its long-term growth strategy in the United States by acquiring a premier regional bank with an aligned culture and risk-management framework.

"First Horizon is a great bank and a terrific strategic fit for TD. It provides TD with immediate presence and scale in highly attractive adjacent markets in the U.S. with significant opportunity for future growth across the Southeast," said Bharat Masrani, Group President and Chief Executive Officer, TD. "Working with the First Horizon team, TD will build upon the success of its strong franchise and deliver the legendary customer experiences that differentiate us in every market across our footprint."

Following the closing of the transaction, Bryan Jordan, President and Chief Executive Officer of First Horizon, will join TD as Vice Chair, TD Bank Group, reporting to Bharat Masrani and will join the TD Senior Executive Team. He will also be named to the Boards of Directors of TD's U.S. banking entities as a director and Chair. Jordan will continue to be based in Memphis.

"We have built a very strong business at First Horizon, and by joining forces with TD, we will create extraordinary value for our key stakeholders with a shared customer-centric strategy, enhanced scale and a broader product set for our clients. This is a true growth story," said Jordan. "We have long respected TD as a leader in U.S. banking and are confident that its continued and growing investments in our local markets will extend our long history of community support. Thank you to our First Horizon associates for their efforts and dedication to our clients and communities as we continue to deliver for them every day. We look forward to successfully completing this transaction and are excited to join TD."

"I am very pleased that Bryan and talented leaders from across First Horizon will join TD. Their deep customer and community relationships and proven success driving growth will be of tremendous value as we integrate our teams and deliver for the millions we serve," added Masrani.

Leo Salom, Group Head, U.S. Retail, TD Bank Group, and President and CEO, TD Bank, America's Most Convenient Bank®, will lead the combined businesses.

"I am excited to welcome First Horizon's associates, leaders and valued customers to TD once the transaction closes. As one team, with complementary businesses, distribution channels and a shared culture of best-in-class customer service, we will chart the next phase of growth together," said Salom. "The Southeastern U.S. represents a tremendous opportunity for TD and the addition of First Horizon's commercial and specialty banking capabilities will position us as a leading national player in commercial banking. We will combine our resources and capabilities and continue to invest in the region as we focus on delivering the most differentiated banking experience in our markets."

**A Top 6 U.S. Bank**

On a pro forma basis excluding merger adjustments, TD's U.S. franchise will be a top 6 U.S. bank, with approximately US$614 billion in assets and a network of 1,560 stores, serving over 10.7 million U.S. customers across 22 states; globally, TD Bank Group will have approximately C$1,841 billion in assets, with over 2,600 branches serving the needs of more than 27.5 million customers.

First Horizon is headquartered in Memphis, Tennessee, with assets of US$89 billion as of December 31, 2021. First Horizon operates 412 branches and serves over 1.1 million consumer, business and commercial customers across 12 states. TD will benefit from First Horizon's strong regional presence, including leadership positions in Tennessee and Louisiana, additional density in Florida, the Carolinas and Virginia, and important footholds in the attractive Atlanta, Georgia, and Dallas and Houston, Texas markets.

Collectively, populations in First Horizon's markets are expected to grow approximately 50% faster than the U.S. national average, with some markets far exceeding that level, offering important future growth opportunities as TD invests in the region.

**Transaction Highlights**

The transaction is expected to be immediately accretive at closing to TD's adjusted EPS and over 10% accretive to 2023E adjusted EPS on a fully-synergized basis. The transaction is expected to result in a fully-synergized return on invested capital of 10% in 2023. The purchase price represents a 9.8 times multiple of First Horizon's 2023E fully-synergized earnings and a 2.1 times multiple to First Horizon's estimated tangible book value at close. TD expects to achieve approximately US$610 million in pre-tax cost synergies equal to 33% of First Horizon's 2023E non-interest expense through a combination of technology and systems consolidation, and other operational efficiencies. TD expects to incur total merger and integration costs of US$1.3 billion primarily in the first two years following close.

The transaction is expected to close in the first quarter of TD's 2023 fiscal year, and is subject to customary closing conditions, including approvals from First Horizon's shareholders and U.S. and Canadian regulatory authorities. If the transaction does not close prior to November 27, 2022, First Horizon shareholders will receive, at closing, an additional US$0.65 per share on an annualized basis for the period from November 27, 2022 through the day immediately prior to the closing. The transaction will terminate, unless otherwise extended, if it does not close by February 27, 2023.

TD expects to use excess capital on its balance sheet for the transaction, reflecting

its robust capital and liquidity position. Concurrent with this announcement, TD separately announced that the automatic share purchase plan established for its normal course issuer bid will automatically terminate in accordance with its terms.

At close, TD's Common Equity Tier 1 ratio is expected to be above 11%.

Based on First Horizon's December 31, 2021 balance sheet, the acquisition would add approximately US$55 billion of loans and US$75 billion of deposits to TD's balance sheet, and TD would expect to take a credit mark at close of US$880 million, or 161 basis points of loans.

In addition, TD has agreed to invest US$494 million in non-voting First Horizon preferred stock (convertible in certain circumstances into up to 4.9% of First Horizon's common stock) to support First Horizon's growth and franchise enhancement, including employee retention programs.

**A Shared Commitment to Local Communities**

Once the transaction is completed, Memphis, First Horizon's current headquarters, will be an important regional hub for TD in the U.S. Southeast, supporting customers and operations and contributing to local communities and economies. TD is also committed to retaining First Horizon's client-facing bankers, with no planned branch closures as a result of the transaction. In addition, upon closing, US$40 million will be contributed to a First Horizon foundation.

TD's purpose, to *enrich the lives of our customers, communities and colleagues*, is embedded in the Bank's strategy and is reflected in its unique and inclusive culture.

The TD Ready Commitment brings TD's philanthropy, people and business together to deliver positive impact in local markets.

"First Horizon and TD share a common belief that we can only thrive when the communities in which we live and work thrive. TD is committed to growing our presence and investments across the states in which First Horizon operates," concluded Masrani.

**Advisors**

TD Securities and J.P. Morgan served as financial advisors and Simpson Thacher & Bartlett LLP and Torys LLP served as legal advisors to TD. Morgan Stanley & Co. LLC served as financial advisor and Sullivan and Cromwell LLP served as legal advisor to First Horizon.

33.    On April 22, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

7

**Financial Projections**

34. The Proxy fails to disclose material information regarding First Horizon's financial projections, specifically: the line items underlying the financial projections.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

**Financial Analyses**

36. The Proxy fails to disclose material information regarding the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. In this case, the disclosures should be even more robust in light of the facts that First Horizon has agreed to pay Morgan Stanley aa fee of $82 million, $74 million of which is contingent on consummation of the Merger and that the Merger Agreement specifically provides that Morgan Stanley may provide financial services to First Horizon, TD and their respective affiliates after completion of the Proposed Merger.

37. The Proxy also states:

> Morgan Stanley's opinion and its presentation to First Horizon's board of directors was one of many factors taken into consideration by First Horizon's board of directors in deciding to approve, adopt and authorize the merger agreement and approve the transactions contemplated thereby, including the merger.

and that:

> Consequently, the analyses as described above should not be viewed as determinative of the opinion of First Horizon's board of directors with respect to the consideration to be received by the holders of shares of First Horizon

8

common stock pursuant to the merger agreement or of whether First Horizon's board of directors would have been willing to agree to different consideration. Morgan Stanley's opinion was approved by a committee of Morgan Stanley investment banking and other professionals in accordance with its customary practice

38. The Proxy thus fails to disclose what weight was given to the Morgan Stanley opinion by the First Horizon board of directors in deciding whether to approve, adopt and authorize the Merger Agreement and the transactions contemplated thereby, including the Proposed Merger.

39. Regarding Morgan Stanley's First Horizon Public Trading Comparables Analysis, the Proxy fails to disclose the individual multiples and metrics for the companies utilized by Morgan Stanley.

40. Regarding Morgan Stanley's Dividend Discount Analysis, the Proxy fails to disclose: (i) the inputs and assumptions underlying the annual growth rate, discount rates, and multiples utilized by Morgan Stanley; (ii) the terminal values utilized by Morgan Stanley; and (iii) the dividends utilized by Morgan Stanley.

41. Regarding Morgan Stanley' First Horizon Analyst Price Targets Analysis, the Proxy fails to disclose: (i) the price targets utilized by Morgan Stanley; (ii) the sources of the price targets utilized by Morgan Stanley; and (iii) the inputs and assumptions underlying the discount rate utilized by Morgan Stanley.

**Determination of Performance Based Stock Units ("PSUs")**

42. In addition, the Proxy contains a description of PSUs that each of First Horizon "Named Executive Officers" are considered to have held and which will be converted into the cash consideration upon consummation of the Proposed Merger, and thus the degree to which those Named Executive Officers will receive consideration greater than and different from the consideration to be received by shareholders.

43. For example, although according to the chart at page 72 of the Proxy, Defendant D. Bryan Jordan will receive $16,404,350 in Unvested First Horizon Open Performance PSUs, the Proxy fails to disclose for Defendant Jordan, and for the other "Named Executive Officers," the "performance metrics" determining whether the PSUs vest for periods that have not been completed, and how those performance metrics are calculated.

## COUNT I

**Claim Against the Individual Defendants and First Horizon for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

44. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

46. First Horizon is liable as the issuer of these statements.

47. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

48. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

50. A reasonable investor will view a full and accurate disclosure as significantly

altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

51. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

52. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

53. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

54. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of First Horizon within the meaning of Section 20(a) of the Exchange Act as alleged herein.

56. Due to their positions as officers and/or directors of First Horizon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and

exercised the same.

59. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

60. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

61. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

62. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

63. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: May 3, 2022

**LONGMAN LAW, P.C.**

By: *[signature: Howard Longman]*
Howard T. Longman
521 5th Ave, 17th Floor
New York, NY 10175
973-994-2315
hlongman@longman.law

*Counsel for Plaintiff*

13